CHRISTINA HOPPMAN v. DAVID PERSHA AND ANOTHER.[1]

April 28, 1933.

No. 29,396.

[1]Reported in 248 N. W. 281.

*Warner E. Whipple* and *George W. Atmore, Jr.* for appellants.
*Leslie S. High,* for respondent.

*OLSEN, Justice.*

Defendants appeal from an order setting aside the verdict in their favor and granting judgment in favor of the plaintiff.

Plaintiff leased to defendants by written lease, for the term of three years commencing May 1, 1930, the first floor and basement of a business building on Superior street in Duluth. The rent for the first two years was $200 per month and for the third year $250 per month, payable monthly in advance. The premises were used as a restaurant, operated by defendant Gatzek. Defendants paid the rent up to May 1, 1932, and paid the sum of $50 on the rent for that month, but failed to pay any further rent, although they

continued to occupy the premises up to and after the trial of this action. The suit was brought to recover the balance of $200 of the rent for the month of May and the rent of $250 per month for June and July, 1932. At the trial plaintiff was permitted to amend so as to include the rent for August and September, 1932. The plaintiff moved for a directed verdict at the close of the evidence and thereafter moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial, and the motion for judgment was granted.

The question presented for review is whether there was, under the pleadings and evidence, any question of fact to be submitted to the jury at the close of the evidence, or, as otherwise stated, whether as a matter of law the plaintiff was entitled to a directed verdict.

■ The making of the lease, the continued occupation of the premises by the defendants, and nonpayment of rent, as stated, are conceded facts. On April 15, 1932, a fire started in the basement of the premises and caused damage so as to render them temporarily untenantable. Plaintiff had the premises repaired, and defendants made such repairs as were needed to their restaurant fixtures and furnishings. The repairs were completed, and defendants reopened the restaurant for business about May 1, 1932. There was an interruption of the restaurant business for about two weeks, but defendants continued in possession during that time and thereafter so continued up to the time of the trial. On April 19 the defendants served upon plaintiff a notice to the effect that because the fire damage rendered the premises untenantable their liability as lessees for rent of the premises at once ceased and they elected to terminate the lease and would remove their effects from the premises as soon as possible after their fire loss was adjusted by the insurer.

This notice had no effect upon the legal rights of the parties. The only object of such a notice would seem to be to inform the lessor that the lessee's fire loss had not been adjusted and that they claimed the right to remain in the premises until the loss was adjusted, without waiving their right then to surrender same.

2 Mason Minn. St. 1927, § 8190, gives a lessee the right to quit and surrender possession of leased premises when such premises, without fault or neglect on his part, are destroyed or so damaged by the elements or any other cause as to become untenantable or unfit for occupancy; and when the lessee so quits and surrenders possession of the premises within a reasonable time after they become unfit, his liability for further rent under his lease ceases. It is settled by our decisions that as to a tenant who fails to quit and surrender possession of the leased premises within a reasonable time after they are rendered untenantable, or who resumes possession thereof after repairs are made, the lease remains in force and the liability for rent continues. Roach v. Peterson, 47 Minn. 291, 50 N. W. 80; Id. 47 Minn. 462, 50 N. W. 601; Flint v. Sweeney, 49 Minn. 509, 52 N. W. 136; Weiss v. Zenith Realty Co. 129 Minn. 486, 152 N. W. 869; Warren v. Hodges, 137 Minn. 389, 163 N. W. 739.

■ Having continued to use and occupy the premises and failed to surrender them, the defendants cannot reap any benefit from or avoid payment of the rent because of the provisions of the statute above noted or the provisions of the lease embodying the statute. Defendants claim that they were excused from surrendering possession because of alleged promises made to them by plaintiff to make a new lease. The court submitted the case to the jury on that issue. But even if we should hold that there was evidence to sustain a finding by the jury that defendants were excused from surrendering possession of the premises within a reasonable time after the fire, such excuse would operate only to extend the time during which defendants might surrender possession, leaving them liable for rent up to the time possession was in fact surrendered. It cannot seriously be claimed that if excused from prompt surrender of possession defendants were thereby released from the payment of rent and could thereafter continue to occupy the premises indefinitely without payment of rent.

■ The defendants, remaining in possession, could relieve themselves from the payment of the rent specified in the lease only by showing a valid cancelation or termination of the lease or a valid modification thereof as to the rent to be paid. There is no claim

of a modification. The trial court, as shown in its memorandum to the order in question, took this view of the case, saying:

"There was a written lease under which defendants have been in possession since its date. This lease had not terminated. No new lease was ever made, nor was there any binding agreement to make a new lease, and no new lease was tendered to plaintiff for execution. At best, whatever dealings there were had not got beyond the stage of negotiations."

It is true that defendants testified that there were oral negotiations with plaintiff about a new lease, and that defendant Gatzek testified that plaintiff said she would give him a new lease. Gatzek first testified, on direct examination, that he had a talk with plaintiff about April 20, either one or two days after the service of the notice upon her as to his continuing in the building, and that he told her he would continue at $200 per month, but that they ended up on that and came to no agreement. He testified, on cross-examination, apparently to another conversation a few days later, that they talked about "trying to make our agreement with the new lease," and that in that talk plaintiff said she "was going to treat me right on that and would make it right to me, for $200 rent * * * and give me a new lease." It is very clear that whatever was said about a rental at $200 was a part of the negotiations for a new lease which defendants wished the plaintiff to enter into with defendant Gatzek alone, so as to release defendant Persha, and that these negotiations did not result in any binding agreement.

■ The lease here in question, being for a three-year term, could not lawfully be canceled, surrendered, or modified except by written release or agreement. 2 Mason Minn. St. 1927, §§ 8459, 8460; Tatge v. Tatge, 34 Minn. 272, 25 N. W. 596, 26 N. W. 121; Fontaine v. Bush, 40 Minn. 141, 41 N. W. 465, 12 A. S. R. 722; Burns v. Fidelity R. E. Co. 52 Minn. 31, 53 N. W. 1017; Bean v. Lamprey, 82 Minn. 320, 84 N. W. 1016; Hanson v. Marion, 128 Minn. 468, 151 N. W. 195; Consumers Grain Co. v. Wm. Lindeke Roller Mills, 153 Minn. 231, 190 N. W. 65.

The defendant Gatzek's insurance was adjusted on or about May 11, 1932. Up to that time the defendants claim, and might well be held, to have the right to remain in the premises without waiving their right to surrender the premises. But before that time and before defendants reopened the restaurant, plaintiff informed defendant Gatzek that her attorney had advised her that the old lease remained in force and that she was going to stand on that. Defendants had not up to that time changed their position or done anything which would create an estoppel.

The order appealed from is affirmed.

[1]Reported in 248 N. W. 292.